# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **STEVEN CRAIG FROST**, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 7:06CV00667 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| Respondent. | ) | |

*Steven Craig Frost, Petitioner Pro Se; Jennifer R. Brockhorst, Assistant United States Attorney, Abingdon, Virginia, for Respondent.*

Steven Craig Frost, a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2006). Upon review of the submissions of the parties and the underlying criminal record, Case No. 1:05CR00036, I find that respondent's Motion to Dismiss must be granted.

I

Frost pleaded guilty on July 28, 2005, pursuant to a written Plea Agreement, to conspiracy to manufacture, possess with intent to distribute, and distribute 500 grams or more of a substance containing methamphetamine, in violation of 21 U.S.C.A. §§ 846 & 841(b)(1)(A) (West 1999 & Supp. 2007) (Count One); distribution of methamphetamine, in violation of 21 U.S.C.A. §§ 841(a)(1) &

841(b)(1)(C) (West 1999 & Supp. 2007) (Count Two), and possession of a firearm

in furtherance of a drug trafficking offense, in violation of 21 U.S.C.A. § 924(c)

(West 2000 & Supp. 2007) (Count Four).  In Paragraph 4 of the Plea Agreement,

Frost stipulated that certain sentencing guideline provisions were applicable to his

conduct and would properly enhance his Base Offense Level by six levels because

his conduct created a substantial risk of harm to the life of a minor and by two levels

because of his leadership role in the offense.  Paragraph 9 stated: "I am knowingly

and voluntarily waiving any right to appeal and am voluntarily willing to rely on the

Court in sentencing me."  Paragraph 10 stated: "I agree not to collaterally attack the

judgment and/or sentence imposed in this case and waive my right to collaterally

attack, pursuant to Title 28, United States Code, Section 2255, the judgment and any

part of the sentence imposed upon me by the Court."[1]  After questioning the

defendant and hearing the government's evidence in support of the plea, I made a

factual determination that Frost's pleas were knowingly and voluntarily made and

found him guilty of Counts One, Two, and Four.

---

[1] Paragraphs 9 and 10 both included the following additional statement of understanding: "I agree and understand that if I file any court document (including but not limited to a notice of appeal) seeking to disturb, in any way, the judgment and/or sentence imposed in my case, the United States will be free to take whatever actions it wishes based on this failure to comply with my obligations under the plea agreement."

On November 2, 2005, I conducted a sentencing hearing. I sentenced Frost to a combined sentence of 270 months imprisonment, consisting of 210 months on Counts One and Two to be served concurrently, and 60 months on Count Four, to run consecutively to the other sentences.[2] Pursuant to the Plea Agreement, the other five counts against Frost were dismissed.

Frost filed a pro se notice of appeal on November 8, 2005. On February 8, 2006, the United States Court of Appeals for the Fourth Circuit dismissed the appeal on Frost's motion.

In his § 2255 motion, Frost alleges the following grounds for relief:

1. Petitioner's guilty plea was involuntary and unknowing because:

   a. neither the court nor counsel explained to petitioner that drug type and weight were essential elements of his charges that must be proven beyond a reasonable doubt;[3]

   b. counsel informed petitioner that his sentence under the guidelines would be fifteen years or he could appeal the sentence;

---

[2] Judgment was entered on November 4, 2005. An amended judgment was entered on January 23, 2006, but did not change the sentence of imprisonment.

[3] Frost believes he is entitled to sentencing relief under *United States v. Booker*, 543 U.S. 220, 248-58 (2005). The *Booker* opinion found that the federal sentencing guidelines were constitutional only if they were advisory rather than mandatory. When Frost was sentenced in November 2005, the sentencing guidelines were no longer mandatory, consistent with the *Booker* decision. In any event, Frost stipulated in Paragraph 4 of the Plea Agreement that his offense conduct warranted enhancement of his Base Offense Level by eight points. Thus, his *Booker* claim is baseless.

- 3 -

c. neither the court nor counsel explained to petitioner the meaning of "in relation to a drug trafficking crime";

d. counsel informed petitioner that the 210-month sentence recommended by the presentence report included petitioner's sentence for the firearm offense;

e. counsel informed petitioner that he could get a life sentence if he did not plead guilty, pursuant to the plea agreement;

f. counsel never informed petitioner that by entering into the plea agreement, he was waiving his rights to appeal his sentence;

g. counsel never explained the significance of waiving his right to file a Motion to Vacate, Set Aside, or Correct Sentence pursuant to § 2255;

h. counsel never explained the significance of the Plea Agreement or the rights petitioner was waiving through the agreement;

2. Counsel provided ineffective assistance by failing to file a notice of appeal after petitioner asked him to do so.

## II

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). "[I]n the

- 4 -

absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221-22. If the court determines that petitioner's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. *Id.* at 220 (internal quotations and citations omitted). The court in *Lemaster* addressed petitioner's ineffective assistance claims bearing on the validity of the plea. *Id.* at 222-23. After finding that such allegations contradicted petitioner's sworn statements at the plea hearing, the court upheld the validity of the § 2255 waiver and dismissed all claims as waived. *Id.* at 223.

The Fourth Circuit has distinguished a narrow class of claims that fall outside the scope of an enforceable waiver of direct appeal rights: (1) claims that the sentence exceeds the maximum statutory penalty, (2) claims that the sentence rests on a constitutionally impermissible factor such as race, or (3) claims that defendant was deprived of the assistance of counsel at a proceeding after the entry of the waiver, such as at sentencing.[4] *United States v. Attar*, 38 F.3d 727, 732 (4th Cir.1994);

---

[4] In *Lemaster*, the court implicitly acknowledged that these discrete claims would also be considered outside the scope of a valid plea agreement waiver of § 2255 rights. 403 F.3d at 220 n. 2.

*United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992); *see also United States v. Blick*, 408 F.3d 162, 169 (4th Cir.2005). Thus, in addition to evaluating the validity of Frost's guilty plea and waiver of § 2255 rights, I must determine whether each of his § 2255 claims falls within the scope of that waiver.

## III

### A. FROST'S GUILTY PLEA AND WAIVER.

Before accepting Frost's guilty plea on July 28, 2005, I questioned him to ensure that his plea was knowing and voluntary. Frost indicated that he was thirty-five years old, had completed the tenth grade in school, could read and write, had never been treated for mental illness or drug abuse, had no current health problems other than some back pain, and was not under the influence of alcohol or of any drug that hampered his ability to understand the proceedings. He indicated that he had had adequate time to discuss the indictment and the case with his attorney, that he had initialed each page of his Plea Agreement and had signed it and understood its terms as summarized by the prosecutor. I asked Frost whether he understood that under the Plea Agreement, he was waiving his right to appeal his sentence and his right to file a collateral attack on his sentence or his conviction. Frost indicated that he understood this waiver. He denied that anyone had made any promise to him,

- 6 -

outside the provisions of the Plea Agreement, or otherwise forced him to plead guilty.

I informed him of the statutory mandatory minimum sentence of ten years for Count

One, with a maximum possible sentence of life imprisonment; the statutory maximum

sentence of twenty years for Count Two; and the consecutive sentence of five years

to life imprisonment for Count Four.

I then explained that the sentencing guidelines range would not be calculated

until after preparation of the presentence report ("PSR"), but informed Frost that he

faced a mandatory minimum sentence of at least fifteen years. I informed Frost that

the sentence might well be higher than the sentence his attorney had estimated that

he would receive. Frost affirmed that he understood. I reviewed the rights he was

waiving by pleading guilty, explained in detail the elements of each charge that the

government would have to prove if he went to trial,[5] and heard a summary of the

---

[5] I specifically informed Frost that if he went to trial on the conspiracy count, the government would have to prove beyond a reasonable doubt that "500 grams or more [of methamphetamine] were, in fact, involved" in the conspiracy's operation. (Plea Tr. 28.)
.

| THE COURT: | Now, if the case went to trial as to [the firearm count], the Government would be required to prove beyond a reasonable doubt that you used or carried a firearm in relation to a drug trafficking offense, and this means that you actively employed the firearm in committing the offense. |
|---|---|
| | Alternatively, the Government could prove, and would be required to prove beyond a reasonable doubt that you knowingly possessed a firearm, meaning that |

Case 7:06-cv-00667-JPJ-mfu   Document 9   Filed 07/05/07   Page 7 of 19   Pageid#: 178

evidence in support of the plea.  Frost indicated that he did not dispute any of the

facts recited by the prosecutor in support of the plea and that he had no questions of

you knew that you had a firearm, and that that possession furthered a drug trafficking offense.  This means that the firearm helped further or advance the drug trafficking crime.

Conspiracy to manufacture, or possess, or distribute methamphetamine and distribution of methamphetamine fall within the definition of a drug trafficking crime.  But it is important for you to understand that mere possession of a firearm was not sufficient proof under this charge.

Now, what I'd like you to do is tell me in your own words what you did that makes you guilty of these crimes. First, Mr. Frost?

MR. FROST:      Well, I prepared the methamphetamine knowingly and with the intent to sell at some point, and that firearms were on me when, they were in the car when I did sell the drugs.

THE COURT:      And you understand in regard to the firearm charges, Mr. Frost, that the . . . Government would be required to prove that this possession of firearms, that is, in your vehicle while you were selling the drugs, that that helped further this drug trafficking crime?  Do you understand that the Government would be required to prove that.

MR. FROST:      Yes, Your Honor.

(Plea Tr.  21-23.)

the court.[6]  He then pled guilty to Counts One, Two, and Four.  I found the pleas to be knowing and voluntary, accepted the pleas, and adjudged Frost guilty of the offenses.

Based on the record, I find that Frost entered valid guilty pleas and valid waivers of his right to appeal and his right to bring this collateral attack under § 2255. I specifically questioned Frost during the plea hearing about the waiver provisions. He indicated that he understood the waivers,[7] the elements of the charges against him, and the consequences of his guilty plea and was voluntarily entering the plea. Moreover, I sentenced him to 270 months, in keeping with the Plea Agreement for which he bargained and within the statutory limits.

---

[6]  Later in the plea hearing, Frost, through counsel, disagreed with the prosecutor's proffer regarding Frost's children's statements to the authorities.  He denied that his children were told reasons not to touch any "jars" stored in the residence they shared with their father—the same residence where he manufactured methamphetamine.  (Plea Tr.  29.)

[7]  If Frost did not understand what a § 2255 action was, then the plea hearing was his time to ask questions.  His current claim of ignorance about § 2255 proceedings is simply not credible in light of his statement under oath that he did understand his waiver of § 2255 rights.

## B. COUNSEL'S ALLEGED ERRORS REGARDING THE PLEAS.

All but one[8] of Frost's ineffective assistance claims in Claim 1 bear on the validity of his guilty pleas and his Plea Agreement waivers. He alleges that counsel's incomplete explanation of the elements of the offense, the potential sentences he faced, and the rights he was waiving by pleading guilty under the agreement caused his plea to be unknowing and, therefore, invalid. These allegations are in direct contradiction of his statements, under oath, to the court during the plea hearing. *Lemaster*, 403 F.3d at 221-22. As demonstrated in the summary of the plea hearing discussion, I fully advised Frost that if he went to trial, the government would be required to prove drug weight beyond a reasonable doubt. I also defined the elements of the firearm charge, including the term "in furtherance of." I informed him that through the Plea Agreement, he waived his rights to appeal or bring a collateral attack. As to each of these issues, Frost stated under oath that he understood. Even if counsel failed to inform him fully on one or more of these issues, I informed Frost

---

[8] In Claim 1d, Frost complains that counsel told him the 210-month sentence in the PSR included the sentence for the firearm charge. This claim has no factual basis in the record, as the PSR does not state a sentence and lists the guidelines range for Frost's offenses as 292 to 365 months. (PSR ¶ 91.) In any event, whatever counsel told Frost about the PSR had no bearing on the validity of his guilty plea, entered weeks before the PSR was prepared. Frost also fails to demonstrate any respect in which counsel's alleged error here affected the outcome at sentencing and so fails to state any claim for relief under *Strickland v. Washington*, 466 U.S. 668, 685 (1984).

- 10 -

during the hearing itself. Thus, he cannot prove that his guilty plea was unknowing or otherwise invalid, based on the allegations in Claims 1a, 1c, 1f, 1g, or 1h.

In Claims 1b and 1e, Frost alleges that counsel told him that he would receive a fifteen-year sentence in exchange for the Plea Agreement or he could appeal, and that if he did not plead guilty, he might get a life sentence. He claims that counsel did not inform him that his sentence would be calculated under the sentencing guidelines. These allegations are simply not credible in light of the record. Frost was informed by the plea agreement itself that he was subject to a statutory maximum sentence of life in prison on Counts One and Four and twenty years on Count Two. The Plea Agreement (initialed and signed by Frost) also informed him of the sentencing guidelines. In fact, in Paragraph 4, he stipulated to specific provisions that would be applied to his sentence, based on his offense conduct. Moreover, I expressly informed Frost that the sentence would be calculated only after I reviewed the PSR and might be higher that whatever estimate counsel might have made regarding his likely sentence. Frost indicated that he understood this principle and also indicated that no one had promised him anything outside the terms of the Plea Agreement in exchange for his guilty plea. As the allegations in Claims 1b and 1e directly contradict Frost's statements under oath during the plea hearing, I find them to be

- 11 -

patently incredible and therefore insufficient to warrant further development or relief under § 2255. *Id.*

For the stated reasons, Frost's allegations in Claim 1 do not demonstrate that either his guilty plea or his simultaneous waiver of his right to bring this action was unknowing or involuntary. Accordingly, I conclude that all of the allegations in Claim 1 are waived, pursuant to the provisions of Frost's valid waiver of his right to bring this § 2255 action.

Because Claim 2 arguably alleges deprivation of counsel on appeal—a critical stage of the proceedings, I find that it falls outside the scope of Frost's valid waiver of § 2255 rights. *See, e.g., Attar*, 38 F.3d at 732-33 (finding that waiver of appeal rights did not bar claim that defendants were denied their Sixth Amendment right to counsel at sentencing). Therefore, I will not dismiss Claim 2 as waived under the Plea Agreement.

## C. INEFFECTIVE ASSISTANCE BY COUNSEL.

To prove that counsel's assistance at trial, at sentencing, or on appeal was so defective as to require reversal of his conviction or sentence, petitioner must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland*, 466 U.S. at 687. First, petitioner must show that "counsel's representation fell below an objective standard of reasonableness," considering

circumstances as they existed at the time of the representation. *Id.* at 687-88.

Petitioner must overcome a strong presumption that counsel's performance was

within the range of competence demanded from attorneys defending criminal cases.

*Id.* at 689.

Second, to show prejudice, petitioner must demonstrate a "reasonable

probability" that but for counsel's errors, the outcome would have been different. *Id.*

at 694-95. When petitioner alleges that counsel's error led him to enter an invalid

guilty plea, he can show prejudice only by demonstrating "a reasonable probability

that, but for counsel's errors, he would not have pleaded guilty and would have

insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *see Ostrander*

*v. Green*, 46 F.3d 347, 355 (4th Cir. 1995), *overruled on other grounds by O'Dell v.*

*Netherland*, 95 F.3d 1214, 1223 (4th Cir. 1996). From the perspective of a

reasonable defendant in the same circumstances as petitioner, the court must consider

such objective factors as the strength of the government's case versus the strength of

the defense case and any sentencing benefit received through the plea bargain versus

the possible penalties to which the defendant would have been subject if convicted

after a trial. *Ostrander*, 46 F.3d at 355-56. The prejudice inquiry becomes whether

a reasonable defendant in petitioner's shoes, absent counsel's alleged errors, would

still have pled guilty to avoid facing the possible consequences of conviction at trial.

If it is clear that petitioner has not satisfied one prong of the *Strickland/Hill* test, the court need not inquire whether he has satisfied the other prong. *Strickland,* 466 U.S. at 697.

It is well established that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In such situations, the attorney's omission, coupled with the defendant's reliance on counsel to file the notice, deprives the defendant of his ability to protect his "vital interests at stake" in the appeal process. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Flores-Ortega*, 528 U.S. at 477. A habeas petitioner who proves these circumstances is entitled to appeal even if he does not or cannot demonstrate any likelihood that his appeal has any potential merit. *Rodriquez v. United States*, 395 U.S. 327, 329-30 (1969). To prove ineffective assistance of counsel in failing to raise particular claims on appeal, however, petitioner must meet the full *Strickland* standard and show a reasonable probability that absent counsel's alleged errors, the outcome of the appeal would have been different. *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000).

First, even absent the waiver of § 2255 rights, Frost fails to establish any constitutional claim of ineffective assistance leading to his guilty plea. As a result of the plea agreement, the government moved for dismissal of five other charges against

- 14 -

Frost. One of those charges, Count Seven, was a second firearm offense under § 924(c)(1), which carried a mandatory minimum sentence of twenty-five years, consecutive to all other sentences. Thus, even though Frost faced a long sentence after the guilty plea, he would have faced at least twenty-five more years in prison if convicted on all counts after a trial. Nothing in Frost's submissions indicates that he had any likelihood of achieving acquittal at trial on any of the eight counts against him. In light of these facts and the strength of the government's case against Frost, I find no reasonable probability that absent any of counsel's alleged errors before the plea hearing, a reasonable defendant would have rejected the Plea Agreement in order to insist on a trial. As Frost fails to demonstrate prejudice, Claim 1 fails under *Strickland/Hill* in all respects.

Frost alleges in Claim 2 that at the conclusion of the sentencing hearing, he told his attorney that he wanted to appeal the sentence, because he had expected to get only fifteen years.[9] He alleges that counsel promised to file an appeal if that was what Frost wanted to do, but then counsel did not file the notice. On November 3, 2005, Frost wrote to the court, expressing his dissatisfaction with his sentence and with

---

[9] Frost's allegations in support of Claim 2 were cursory in his initial § 2255 motion, but he enlarged on those allegations in his response to the Motion to Dismiss. Although he has never moved to amend the § 2255 action to include these additional details, I will consider his allegations as a whole in addressing his claims.

- 15 -

counsel and stating his desire to appeal because he received more that the fifteen years that he expected. The court construed and filed the letter as a pro se notice of appeal. Thereafter, counsel allegedly advised Frost that he was facing a life sentence if he pursued the appeal. On January 3, 2006, counsel submitted a Motion to Withdraw Notice of Appeal and to Dismiss Appeal. Frost endorsed this motion. Paragraph 3 of the motion stated:

> After consulting with counsel and being advised that under the terms of his plea agreement, his right to appeal [his conviction and sentence] has been waived, it is Mr. Frost's desire to withdraw the notice of appeal and requests that his appeal be dismissed.

The court of appeals granted the motion and dismissed the appeal on February 8, 2006.

Frost now alleges that counsel misled him into withdrawing his appeal by threatening him with a life sentence. Frost states his belief that because he was convicted of conspiracy, he could only be convicted of one firearms offense under § 924(c). He states, with no supporting authority whatsoever:

> A conspiracy that included all substantive acts that were, or could have been, charged under separate counts. Because this is one single conspiracy, however, there can be only one single violation of § 924(c). Any additional charges would be multiplicious [sic] and would have had to have been dismissed to avoid duplicative punishment.

- 16 -

(Petr.'s Resp. 22). Based on this belief, he asserts that counsel was ineffective in advising him to withdraw his appeal.

This case does not present a situation where a criminal defendant lost his right to appeal because he relied on counsel to file a requested notice of appeal. Frost's right to appeal was preserved by the letter construed and filed as a pro se notice of appeal, and Frost could have pursued that appeal. Therefore, I find that this case does not fall under *Evitts* or *Rodriquez*. Rather, this claim alleges that counsel provided ineffective assistance in advising Frost about the benefits and dangers of pursing the appeal. To prevail in such a claim, Frost must demonstrate a reasonable probability that absent counsel's alleged errors, the outcome would have been different. He does not meet this standard.

Frost's assertion that counsel was ineffective in advising him to withdraw the appeal has no basis in fact. For reasons I have already stated, counsel reasonably believed the plea and the waiver were valid and enforceable and beneficial to Frost. As counsel undoubtedly explained to Frost, Paragraphs 9, 10, and 18 of the Plea Agreement expressly provided for voidance of the Plea Agreement and reinstatement of all dismissed charges if Frost filed an appeal or a § 2255 motion. Counsel also reasonably believed that Frost could be convicted on all eight of the charges against him if the government revoked the Plea Agreement, based on Frost's appeal.

- 17 -

Contrary to Frost's belief, he could have been convicted and sentenced on both § 924(c) counts. The two § 924(c) charges in the indictment concerned two different incidents—Count Four (based on his conduct on March 9, 2005) and Count Seven (based on his conduct on March 7, 2005). The evidence that the government proffered during the plea hearing was sufficient to support conviction on both of these counts. (Plea Tr. 24-26.) These individual firearms offenses, the conspiracy offense, and the other charges each requires some element of proof that each of the others does not and therefore there is no multiplicity. *See Callanan v. United States*, 364 U.S. 587, 593 (1961) (holding that conspiracies and substantive offenses committed in the course of those conspiracies are separate offenses and may be charged separately). Moreover, Frost does not present any reasonable likelihood that he would have been acquitted on any of the eight charges if he had gone to trial. If convicted on all eight counts, he would have faced a sentence of more than 200 months on the drug charges, plus consecutive sentences of five years and twenty-five years on the § 924(c) charges. To a man who was thirty-five years old at the time of the plea hearing, a total sentence of 560 months in prison is the functional equivalent of a life sentence.

On these facts, I find that counsel did not act unreasonably in advising Frost to withdraw the appeal and I also find no prejudice. Given the likelihood of a much

Case 7:06-cv-00667-JPJ-mfu   Document 9   Filed 07/05/07   Page 18 of 19   Pageid#: 189

longer sentence after conviction at trial, no reasonable defendant would have pursued

an appeal at the risk of breaching such a favorable plea agreement. Finding no

ineffective assistance on appeal, I will grant the Motion to Dismiss as to Claim 2.


## IV

For the stated reasons, I find that the Motion to Dismiss must be granted.

Claim 1 is waived pursuant to the provision in the Plea Agreement by which Frost

waived his right to collaterally attack his conviction or sentence. Claim 2 is without

merit.

A separate Final Order will be entered herewith.

DATED: July 5, 2007

/s/ JAMES P. JONES
Chief United States District Judge

- 19 -